NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DANVERS MOTOR CO., INC., a                    :
Massachusetts corporation; BOB                :          **Hon. Dennis M. Cavanaugh**
CHAMBERS FORD d/b/a/ AUGUSTA                   :
FORD, a Maine corporation; CONCORD            :               **OPINION**
FORD-LINCOLN-MERCURY, a New                   :
York corporation, FETTE FORD INC., a          :          Civil Action No.02-2197 (DMC)
New Jersey corporation; SENATOR               :
FORD, INC., Delaware corporation;             :
ROSEVILLE MIDWAY FORD,                        :
COMPANY, a Minnesota corporation;             :
FULLERS' WHITE MOUNTAIN                       :
MOTORS, an Arizona corporation;               :
CONDON FORD INC., an Iowa                     :
corporation; and G. & S.                      :
MANAGEMENT CORPORATION d/b/a.                 :
TILTON FORD, a New Hampshire                  :
corporation; on behalf of themselves and     :
all others similarly situated,                :
                                              :
            Plaintiffs,                       :
                                              :
               v.                             :
                                              :
FORD MOTOR COMPANY,                           :
                                              :
            Defendant.                        :

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Representative Plaintiffs Danvers Motor

Co., Inc., Bob Chambers Ford d/b/a/ Augusta Ford, Concord Ford-Lincoln-Mercury, Fette Ford Inc.,

Senator Ford, Inc., Roseville Midway Ford Co., Fullers' White Mountain Motors, Condon Ford, Inc.

and G. & S. Management Corporation, d/b/a/ Tilton Ford seeking class certification on behalf of

themselves and those similarly situated pursuant to Federal Rule of Civil Procedure 23; and also

upon motion by Defendant Ford Motor Company to strike evidence and arguments submitted in

Plaintiffs' Reply Brief in support of class certification.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion to strike is **denied**, with the exception of ¶¶4(c) and 4(g); and Plaintiffs' motion for class certification is **granted**.

I.   BACKGROUND

In 2000-2001, Defendant Ford Motor Co. launched its Blue Oval Program ("BOP"), causing alleged financial harm to Plaintiffs.  As a result, nine Representative Plaintiffs brought this action, raising claims arising under the Robinson-Patman Act ("RPA"), 15 U.S.C. §§ 13(a), (d), (e); the Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221-25; various state statues and policy; and common law, including claims for breach of contract, bad faith and fraudulent misrepresentation.  See Am. and Supplemented Class Action Compl. ¶9.  Based on these claims, Plaintiffs seek injunctive and declaratory relief, damages (including compensatory, statutory, treble, and other punitive damages) and costs and fees of this suit.  Id.  Additionally, Plaintiffs seek class certification on behalf of themselves and those similarly situated.  The currently named Plaintiffs also seek the Court's permission to sue as representative plaintiffs on behalf of the proposed class of Ford franchisees (hereinafter the named Plaintiffs and proposed class of franchisess will be referred to collectively as "Plaintiffs")

A.   **The Blue Oval Program ("BOP")**

Between 2000 and March 2005, the original BOP was in place.  As noted in Ford's Opposition Brief, the original BOP ended in March 2005.  See Am. Answer ¶3.[1]  Plaintiffs'

---

[1]At that time Ford raised the MSRP by 1% on most vehicles, leaving dealers' wholesale prices unchanged.  Ford states that its current "Blue Oval Certified" program includes non-

Amended and Supplemented Class Action Complaint alleges injuries under the Original BOP only and not under the revised "Blue Oval Certified" program.

As alleged in Plaintiffs' Amended and Supplemented Complaint, dealers must qualify for and maintain Certification not only to participate in BOP, but also to avert termination of their franchises. Am. and Supplemented Class Action Compl. at ¶¶43, 172. A dealer achieved Certification either by reaching a designated "Voice-of-the-Consumer Target" ("VOC Index") or by achieving an overarching score so high that the dealer need meet no other Blue Oval criterion. Id. at 62. A dealer's VOC Index was determined by the surveys returned by a dealer's customers. All of the currently named Plaintiffs were BOP certified during all or some of the period between April 2001 and March 2005, with the exception of Fullers' White Mountain Motors. Def. Opp'n Br. at 9.

Plaintiffs complain that BOP created a three-tier pricing scheme because it provided rebates on dealers' vehicle sales of 1.25% of MSRP to some dealers, 1% of MSRP to other dealers and no payment (0%) to other dealers. Id. at ¶55. Based on this pricing scheme, Plaintiffs argue that BOP discriminated among dealers by making such benefits available only to Certified dealers and their employees. Id. at ¶56. On the other hand, BOP allegedly imposed upon Certified dealers the financial burden or costly facility requirements, as determined by J.D. Power and Associates ("J.D. Power"). Id. at ¶87. Finally, Plaintiffs complain that dealers must satisfy Ford's requirements each year or Ford will decertify the Certified dealers, withhold reimbursement and withdraw most benefits. Id. at ¶74. Plaintiffs allege that this imposes a burden on both Certified and uncertified

---

monetary benefits of the original program initiated in 2000, no longer requires on-site evaluations of dealerships for any dealer, and no longer pays bonuses on each vehicle sold. Def. Opp'n Br. at 8.

dealers because BOP is subject to constant modification, including increases of the VOC Target. Id. at ¶73.

Central to Plaintiffs' request for relief is their contention that BOP causes constructive termination. Plaintiffs specifically allege that "[i]n discussing BOP with an individual dealer, however, a Ford field representative stated that the BOP would be good for strong dealers but would bring about the termination of those dealers who did not or could not meet Ford's BOP standards." Pl. Br. at 5 (citing Tichenor Affid. ¶¶8-9). Termination would allegedly be likely because "even those who passed the BOP requirements would face termination if they fell into the lowest 10% in their rankings and that the process would be repeated each year, the lowest 10% receiving termination notices." Tichenor Affid. ¶9. Plaintiffs allege that under BOP failure to Certify is a cause for termination; however, "[f]ailure to Certify and maintain Certification is not a basis for termination in the Franchise Agreement." Pl. Br. at 6 (citing Ex. B-J (SSAs) (Standard Provision Tichenor Affid. ¶17).

Additionally, Plaintiffs allege that BOP imposed benefits and detriments upon all dealers; and thus, the program injured both certified and uncertified dealers. Under the original BOP, the following benefits were available only to Certified dealers:

(a) increased After-Warranty Adjustment Allowance Levels in the increment of $1,500 for non-powertrain repairs and $3,000 for powertrain repair without obtaining the prior approval from Ford for the repairs that non-Certified dealers must await;

(b) ten percent increase in Ford's transportation assistance allowance;

(c) fifty percent discount on all retail invoice messages;

(d) up to fifty percent tuition reduction on finance and insurance related courses;

(e) 401K Plan for dealer's employees;

(f) Blue Oval Certified Healthcare Plan; and

(g) Blue Oval National Advertising

Id. at ¶53.  Accordingly, uncertified dealers were allegedly disadvantaged because they did not receive these benefits.  Regarding detriments, Plaintiffs allege that "[u]pon achievement of the VOC criteria, the dealer then face[d] costly facilities requirements."  Pl. Br. at 11 (citing Ex. O at 2).  The required facilities requirements were determined by J.D. Power and, as a result "the dealers' investment increased, and their freedom and control of that investment to satisfy their respective markets proportionately declined."  Pl. Br. at 12 (citing Am. and Supplemented Class Action Compl. ¶¶105-6, 166-69.  Additionally, Plaintiffs allege that "BOP imposed phased-in operational and facility requirements different from and far more onerous than the dealers' existing agreements with Ford."  Pl. Br. at 13.  Finally, as stated above, Plaintiffs allege generally that BOP is a detriment to certified dealers because they risk decertification from year to year.

**B.    Plaintiffs' Claims**

Plaintiffs seek class certification for the following claims pled in the Amended and Supplemented Class Action Complaint: First through Third Counts for violation of Section 13(a), (d) and (e) of the RPA; Fourth Count for violation of the ADDCA; Fifth and Sixth Counts for violation of state franchise statutes; Seventh Count for breach of Sales and Service Agreement ("SSA"); Eighth Count for breach of contract and wrongful attempt to unilaterally amend the SSA; and Ninth Count for breach of implied covenant of good faith and fair dealing.  Plaintiffs do not seek class certification for the Tenth Count alleging fraudulent misrepresentation.

1.      First Count: Violation of Robinson-Patman Act, 15 U.S.C. § 13(d)

Section 13(d) of 15 U.S.C. (the RPA) prohibits

the payment or contract for the payment of anything of value . . . in connection with
the processing, handling, sale or offering for sale of any products or commodities
manufactured, sold or offered for sale by such person, unless such payment or
consideration is *available on proportionally equal terms to all other customers
competing in the distribution of such products or commodities*.

(emphasis added).  Here, Plaintiffs allege that Certified dealers pay lower prices for the same make

and model of Ford motor vehicles than dealers who fail to certify.  See Am. and Supplemented Class

Action Compl. ¶251.  This claim is directly related to the alleged three-tiered pricing scheme

imposed by BOP.  Id. at ¶55.  Further, Plaintiffs allege that the disparity in pricing and proportionally

*unequal* terms of sale is a result of the cash reimbursements paid by Ford to Certified or Recertified

dealers and by Ford's payment of advertising for Certified dealers.  Id. at ¶¶258, 261.  Thus, Ford's

products were not available on proportionally equal terms, in violation of 15 U.S.C. § 13(d).  These

disparities allegedly created unfair competition and caused constructive termination of franchises.

Id. at ¶260.

2.      Second Count: Violation of Robinson-Patman Act, 15 U.S.C. § 13(e)

Section 13(e) of 15 U.S.C. (the RPA) prohibits

discrimination in favor of one purchaser against another purchaser or purchasers of
a commodity bought for resale . . . by contributing to the furnishing of, any *services
or facilities connected with the processing, handling, sale, or offering for sale of such
commodity* so purchased upon terms not accorded to all purchasers on proportionally
equal terms.

(emphasis added).  Plaintiffs contend that the benefits conferred upon Certified dealers under BOP

constituted "services and facilities connected with the processing, handling, sale or offering for sale

of Ford motor vehicles." <u>See</u> Am. and Supplemented Class Action Compl. ¶278. Plaintiffs allege that these services and facilities affected interstate commerce, created unfair competition and caused constructive termination of franchises. <u>Id.</u> at ¶279. Further, Plaintiffs contend that Certification is not available to dealers on proportionally equal terms because some dealers are permitted to self-Certify for BOP while others must submit to a subjective evaluation by J.D. Power. <u>Id.</u> at ¶283.

        3.      <u>Third Count: Violation of Robinson-Patman Act, 15 U.S.C. § 13(a)</u>

Section 13(a) of 15 U.S.C. (the RPA) prohibits

> discriminat[ion] in *price between different purchasers of commodities of like grade and quality* . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition, or with customers of either of them

(emphasis added). The Amended and Supplemented Complaint alleges that due to BOP and the VOC Indexes, equivalent prices for the same goods are not available because there will always be dealers who fall below the average-based VOC indexes, who cannot qualify and who will suffer constructive termination of their franchises. <u>See</u> Am. and Supplemented Class Action Compl. ¶295. Both the three-tiered pricing scheme as well as the reimbursement program allegedly contribute to the inequality of pricing. <u>Id.</u> at ¶296. These effects of BOP, Plaintiffs allege, cause unfair competition. <u>Id.</u> at ¶298. Further, Plaintiffs argue that requiring dealers to submit to a subjective evaluation by J.D. Power has a prohibitive effect on commerce. <u>Id.</u> at ¶300.

        4.      <u>Fourth Count: Violation of the Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221-1225</u>

Section 1222 of 15 U.S.C. (the ADDCA) authorizes automobile dealers to bring suit against automobile manufacturers for failure to "act in good faith in performing or complying with any of

the terms or provisions of the franchise, or in terminating, cancelling, or not renewing the franchise with said dealer." Plaintiffs allege that Defendant has violated its obligation of good faith by using price increases to coerce dealer participation in BOP and, in turn, using BOP as a "device for selecting dealers for termination, or otherwise causing them constructively or actually to fail." Am. and Supplemented Class Action Compl. ¶¶308-315.

5.    Fifth and Sixth Counts: Violation of State Franchise Statutes

In the Fifth Count of the Amended and Supplemented Class Action Complaint, Plaintiffs seek relief pursuant to their respective state statutes based upon Defendant's "imposition and alteration of the Blue Oval Program" because it "is an illegal means of constructive termination or attempted termination of Plaintiffs' franchises, in violation of applicable obligations." Id. ¶325. In the Sixth Count, Plaintiffs seek relief pursuant to their respective state statutes, alleging that "the imposition and alteration of the Blue Oval Program are contrivances to permit Ford to bring about indirectly the constructive demise of dealers financially, competitively or otherwise by weakening them through the operation of the Program." Id. ¶332.

6.    Seventh, Eighth and Ninth Counts: - Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Defendant breached the Franchise Agreement by implementing BOP because the Franchise Agreement "does not permit, condone or comprehend such intrusive, expensive and coercive and arbitrary control of all phases of the dealers' investment, facilities and operations as the Blue Oval Program imposes on them." Id. ¶341. Thus, Plaintiffs assert that Defendant breached the agreement because dealers may "only be terminated by an instrument in writing on specific conditions and no provision of the Agreement contemplates the *de facto*

-8-

termination of franchises that the Blue Oval Program threatens." Id. ¶344.  Additionally, Plaintiffs

allege that the BOP breaches the parties' agreement because it is a "prohibited material unilateral

amendment to the Agreement."  Id. ¶¶ 345, 351-53.  Finally, Plaintiffs allege that by imposing and

altering the BOP, Defendant violated its duty of good faith and fair dealing towards Plaintiffs and

others similarly situated.  Id.  ¶¶ 357-62.

## II.   MOTION TO STRIKE

Following the filing of Plaintiffs' Brief in Reply to Ford's Motor Company's Opposition to

Plaintiffs' Motion for Class Certification ("Reply Brief"), Defendant moved to strike both arguments

and evidence contained in Plaintiffs' Reply Brief.  Defendant's contentions are that (1) Plaintiffs

presented new evidence and arguments in the Reply Brief that had not been previously addressed;

(2) the Fette Cerfication contained statements in violation of Local Civil Rule 7.2(a); (3) the

Tichenor Deposition was taken when Defendant did not have adequate time or documents to prepare;

(4) the Manuel Declaration has no applicability to this case; and (5) the Reply Brief contained *ad

hominem* attacks on Ford Motor Company and its counsel.

The Court finds that the Reply Brief properly responds to arguments and assertions contained

in Ford's Opposition Brief.  Plaintiffs' Reply Brief serves its purpose: it "respond[s] to the

opposition brief [and] explain[s] a position that the respondent has refuted."  Dana Transp., Inc. v.

Ableco Fin., LLC, Civ. A. 04-2781, 2005 WL 2000152, *6 (D.N.J. Aug. 17, 2005).  See also Bayer

AG v. Shein Pharm. Inc., 129 F. Supp. 2d 705, 716 (D.N.J. 2001), aff'd, 301 F.3d 1306 (3d Cir.

2002); Elizabethtown Water Co. v. Hartford Water Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J.

1998).  While Plaintiffs arguably present new evidence in support of their position, they do not raise

new arguments or grounds for relief not asserted in their moving papers.

Defendant contends that the Certification of Lawrence Fette as well as the portion of Plaintiffs' Reply Brief relying upon it should be stricken because the Certification does not comply with Local Civil Rule 7.2(a)'s requirement that "[a]ffidavits shall be restricted to statements of fact within the personal knowledge of the affiant.  Arguments of the facts and the law shall not be contained in the affidavits."  With the exception of two paragraphs contained in the Fette Certification, it is the finding of this Court that Mr. Fette's certification was based on his own personal knowledge of the facts and merely responds to allegations set forth in Defendant's opposition brief.  Mr. Fette's account of his impressions and viewpoint as a dealer is factually relevant and not mere opinion because it responds to Ford's allegations regarding dealer satisfaction with BOP.  This Court finds that it is appropriate to strike ¶4(c) and ¶4(g) of the Fette Certification wherein Mr. Fette offers both his opinion and also his "lay interpretation" of the Third Circuit's decision in Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 288 (3d Cir. 2005).  These paragraphs violate Local Civil Rule 7.2(a) because they do not contain statements of fact but rather opinion and legal argument.

This Court is not persuaded by Defendant's argument that the Tichenor Deposition should be stricken from the record merely because Defendant has repeatedly objected to the taking of this deposition.  Magistrate Judge Hedges permitted Ford to depose Mr. Tichenor and this Court will not review that decision at this stage.  Further, Mr. Tichenor and his staff produced documents for Ford in preparation for the deposition.  See Order of June 26, 2006.

Defendant attacks the relevance and admissibility of the Manuel Declaration because it is an

expert report submitted in another case - <u>Bayshore Ford Truck Sales, Inc. v. Ford Motor Company</u>, No. 99-cv-741, 2006 WL 3371690 (D.N.J. Nov. 17, 2006).  This Court is satisfied that the Manuel Declaration was supplied only to respond to Ford's claim that Plaintiffs "failed to identify the expert, attach his or her report or declaration, or even explain how that methodology might work in the face of myriad individual damages issues."  Def's Opp'n Br. to Class Certification at 15.  By submitting the Manuel Declaration with the Reply Brief, Plaintiffs merely set forth a possible methodology for evaluating damages.  Thus, striking the Manuel Declaration is unnecessary and inappropriate.

Finally, Defendant argues that Plaintiffs' Preliminary Statement, contained within pages 1-3 of the Reply Brief contains inappropriate *ad hominem* attacks on Defendant and Defendant's counsel.  This position is unfounded.  Plaintiffs' characterizations of Defendant's arguments and tactics are not inappropriate and do not go beyond the appropriate bounds of professional advocacy.  Defendant is correct in noting that the Third Circuit has recognized that there is a difference between comments directed at the tactics and arguments advanced by defense counsel and those aimed at the character of the attorneys themselves, with nothing inherently improper about the former.  <u>See</u> <u>United States v. Lore</u>, 430 F.3d 190, 213 (3d Cir. 2005).  However, in applying this distinction to the facts of this case, it is evident that Plaintiffs' arguments do not fall in the disfavored category of attacks on the attorneys themselves. Rather, in replying to Defendant's opposition brief, Plaintiffs' appropriately addressed Defendant's arguments and attempted to draw the Court's attention to any misleading characterizations or citations contained in Defendant's argument.  This type of response is appropriate and should not be stricken from the record.

### III.   STANDARD FOR CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(b)(3)

"To obtain class certification, plaintiffs must satisfy all of the requirements of Rule 23(a) and come within one provision of Rule 23(b)." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624 (2d Cir. 1996) (citing Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 248 (3d Cir.), cert. denied, 421 U.S. 1011 (1995)). Thus, plaintiffs seeking certification must satisfy Rule 23(a)'s four requirements of "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." Georgine, 83 F.3d at 624. Additionally, Plaintiffs in this case seek certification pursuant to Rule 23(b)(3); therefore, they must also show that "the questions of law or fact common to all members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs bear the burden of establishing that these requirements are satisfied and that the proposed class should thereby be certified. Curley v. Cumberland Farms Dairy, Inc., 728 F. Supp. 1123, 1128 (D.N.J. 1989). In determining whether Plaintiffs have satisfied these requirements, the Court must accept plaintiffs' factual allegations as true. Weisfeld v. Sun Chem. Corp., 210 F.R.D. 136, 137 (D.N.J. 2002), aff'd, 84 Fed. Appx. 257 (3d Cir. 2004) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974)). As part of the certification analysis, the Court should "refrain from conducting a preliminary inquiry into the merits." Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998), cert. denied, 526 U.S. 1114 (1999) (citing Eisen, 417 U.S. at 177-78). Failure to establish any of Rule 23(a)'s four elements requires denial of class certification. See Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107, 115 (D.N.J. 2002); Valley Drug Co. v.

-12-

Geneva Pharms., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003) reh'g en banc denied without published op., 92 Fed. Appx. 783 (11th Cir. 2004); Simon v. KPMG LLP, No. 05-cv-3189, 2006 WL 1541048, *4 (D.N.J. Jun. 2, 2006) (citing Abraham Fotta v. Trs. of the United Mine Workers of Am, 319 F.3d 612, 618 (3d Cir. 2002)). It is the duty of this Court to "enumerate findings of fact to establish each of the Rule 23 requisites." In re the Prudential Ins. Co. of Am. Sales Practices Litig, ("Prudential I"), 962 F. Supp. 450, 508 (D.N.J. 1997), aff'd, 148 F.3d 283 (3d Cir. 1998) ("Prudential II"), cert. denied, 525 U.S. 1114 (1999). "In a borderline case . . . any error, if there is to be one, should be committed in favor of allowing a class action." Prudential I, 962 F. Supp. at 508 (quoting Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.) (citations omitted), cert. denied, 474 U.S. 946 (1985)).

**A.    Plaintiffs' Proposed Class**

Plaintiffs define the proposed class as "[t]hose entities or persons who are or were franchisees of the Ford Division of Ford Motor Company in the United States during the existence of Ford's BOP," excluding "Defendant, its subsidiaries, affiliates, officers, directors and employees and immediate family members of such persons." Am. and Supplemented Class Action Compl. ¶26.

**B.    Rule 23(a) Requirements**

1.    Numerosity

To satisfy the requirement of Rule 23(a)(1), the proposed class must be "so numerous that joinder of all members is impracticable." In this context, "impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406 (D.N.J. 1990) (quoting Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). Here, the proposed class consists of all

-13-

Ford franchisees during the existence of BOP. <u>See</u> Am. and Supplemented Class Action Compl. ¶26. Plaintiffs estimate that there were "over 4,000 Ford franchisees located throughout the United States" during the time of the original BOP. Pls. Br. at 23. In its Opposition Brief, Defendant does not dispute that the proposed class satisfies the numerosity requirement. Based on the foregoing, it is the finding of this Court that the proposed class of Plaintiffs satisfies the Rule 23(a)(1) numerosity requirement.

2.    <u>Commonality</u>

Rule 23(a)(2) commonality exists if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All claims or facts do not have to be common to all class members; "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." <u>Prudential II</u>, 148 F.3d at 310. <u>See also</u>, <u>Baby Neal v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994). Further, "factual differences among the putative claims of the class members will not defeat certification." <u>Prudential II</u>, 148 F.3d at 310 (quoting <u>Baby Neal</u>, 43 F.3d at 56). Plaintiffs emphasize that their claims require the Court to review the legality of Ford's common course of conduct in BOP and the interpretation of the standard form contracts. Pl. Br. at 24. As was the case in <u>In re Honeywell International Inc. Securities Litigation</u>, the 23(a)(2) commonality requirement is satisfied where Plaintiffs allege injury arising from a common "scheme" or course of conduct by the Defendant. 211 F.R.D. 255, 260 (D.N.J. 2002). Here, Plaintiffs allege harm from the same common facts - Ford's actions in regard to implementing and revising BOP. As such, present the same common questions of law. For these reasons, Rule 23(a)(2)'s commonality requirement is satisfied.

-14-

3.    Typicality

To satisfy the Rule 23(a)(3) typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Sun Chem., 210 F.R.D. at 140 (citing Baby Neal, 43 F.3d at 57). Similar to the commonality requirement, "factual differences between the claims of the putative class members do not defeat certification." Prudential II, 148 F.3d at 311 (quoting Baby Neal, 43 F.3d at 56). Further, "[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." Sun Chem., 210 F.R.D. at 140 (quoting In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)).

Echoing their argument regarding the commonality requirement, Plaintiffs argue that the 23(a)(3) typicality requirement is satisfied because "[t]he claims of both the class representatives and the absentee class members are founded upon the same legal theories and the same common course of conduct surrounding Ford's BOP." Pls. Br. at 25. In support of this position, Plaintiffs again emphasize that their claims require the Court to adjudicate the same legal issues regarding Defendant's actions relating to BOP as well as review the standard terms in the parties' SSAs.

-15-

In response, Defendant contends that Plaintiffs fail to establish either typicality or commonality because "their claims and requests for damages raise individual issues and interests that differ, and in many cases, conflict with respect to other putative class members." Def. Opp'n Br. at 16. Thus, Defendant argues that "claims for damages of the type alleged by plaintiffs are particularly inappropriate for class treatment . . . because lost profits and lost business must be determined on an individualized basis." Id. at 17. This argument is unpersuasive because the focus of the Court's inquiry in regards to the typicality requirement is not whether Plaintiff's damages are typical but whether the cause of the harm is typical of the proposed class. The Third Circuit explained this rule in Prudential II, wherein the plaintiffs

> alleged that they suffered harm as the result of the same company-wide conduct that injured the absentee class members. The various forms which their injuries may take do not negate a finding of typicality, provided the cause of those injuries is some common wrong. In this instance, the alleged common scheme provides an appropriate basis for a finding of typicality. Since all members of the class would need to demonstrate the existence of this scheme, their interests are sufficiently aligned that the class representatives can be expected to adequately pursue the interests of the absentee class members

148 F.3d at 312 (internal citations omitted); see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 184 (3d Cir. 2001). Similar to the plaintiffs in Prudential II, Plaintiffs here allege that their various injuries were caused by the same common course of conduct: Ford's actions regarding BOP. The Representative Plaintiffs' interests are aligned with the interests of the absentee class members because all of the Plaintiffs' injuries arise from the same action by the Defendants. Based on the foregoing, it is the finding of this Court that the Rule 23(a)(3) typicality requirement is satisfied.

4.     Adequacy of Representation and Protection of Class Interests

To satisfy Rule 23(a)(4)'s adequacy of representation factor, "the representative parties must fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To assess whether this requirement is met, the Court must look to two factors: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." Prudential I, 962 F. Supp. at 519.

Here, Defendant does not contest the first prong - that Plaintiffs' attorneys are qualified, experienced and generally capable.  Plaintiffs put forth ample support that this prong is satisfied. Specifically, Plaintiffs' certifications establish that counsel has substantial experience in the prosecution and resolution of complex civil litigation and class actions as well as special expertise in the automotive industry. See Certification of Eric L. Chase in Support of Class Counsel; generally Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir.), reh'g denied, 785 F.2d 1034 (5th Cir. 1986).

With regard to the second prong, the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" and does not mandate that the interests of all class members be identical.  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 625 (1997). Defendant argues that the alleged price discrimination caused by BOP has created antagonistic interests among the proposed class members and thus neither the adequacy requirement nor the commonality and typicality requirements can be satisfied.  Defendant bases this argument on the fact that the proposed class contains both "winners (the certified dealers) who allegedly profited from the disadvantaged status of the losers (non-certified dealers)." Def. Opp'n Br. at 18.  While Defendant

-17-

is correct in noting that "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class," Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000), this issue is not present here.  In this case, both BOP certified *and* uncertified dealers are claiming injuries caused by BOP.  See Am. and Supp. Class Action Compl. ¶¶53, 74, 87.  As summarized in the Third Circuit's previous opinion in this case, Plaintiffs claim four areas of damage caused by BOP that are shared by both certified and uncertified dealers:

> [Plaintiffs] say [BOP] caused them (1) to spend money against their will to comply with its certification requirements; (2) to relinquish control over certain aspects of dealership operations; (3) to forfeit interest payments which would otherwise be earned on money spent covering the BOP's mandatory 1% fee; and (4) to face the constant threat of losing certification if Ford chooses to ratchet up BOP standards in the future.

Danvers, 432 F.3d at 286.  While certified and uncertified dealers may have had some variation in the way in which BOP allegedly effected their businesses, ultimately they both claim injuries based upon the same conduct by Ford.  There is no indication as set forth in either of the parties' submissions that antagonism actually exists or likely exists between the proposed class of Plaintiffs.

## C. Rule 23(b) Requirements

### 1. Predominance of Common Questions of Law and Fact

Certification pursuant to 23(b)(3) requires a finding by the Court that common questions of law or fact predominate over individual issues.  See Prudential I, 962 F. Supp. at 510-11.  "To evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication."  Id. at 511 (citing 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 4.25, at 4-81 to 4-86).

-18-

However, "[t]he mere existence of individual issues will not of itself defeat class certification." In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 186 (D.N.J. 2003).  See also Prudential II, 148 F.3d at 315; Sun Chem., 210 F.R.D. at 141.  Rather, Courts have readily held that even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation.  Prudential I, 962 F. Supp. at 511. (gathering authority).  Similarly, "[i]n cases where it is alleged that the defendant . . . engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements."  Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 231 (D.N.J. 2005).  Additionally, the need to calculate "damages on an individual basis should not preclude class [certification] *when the common issues which determine liability predominate*."  Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137 (3d Cir. 2000) (emphasis in original); see also Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1997).

Defendant argues that  in assessing whether common issues of law or fact predominate the Court must examine the underlying claims on which Plaintiffs seek recovery. Def. Opp'n Br. at 26. Flowing from this position, Defendant argues that the predominance element is not satisfied in this case because Plaintiffs' RPA and ADDCA claims require individualized proof.  This argument is unpersuasive because, as stated above, where a defendant has allegedly "engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements."  Varacallo, 226 F.R.D. at 231.  Here, Plaintiffs' RPA and ADDCA claims are based on the same actions allegedly taken by the Defendant with regard to BOP.  As Plaintiffs note in their Reply Brief, Defendant's potential liability hinges upon "a single, uniform nationwide course of

-19-

conduct directed at every Ford dealer in the country involving standard documents and agreements."
Pls. Reply Br. at 13.  The fact that there may be individualized questions regarding the dealers' sales,
pricing and lost profits does not preclude certification.  Rather, certification is appropriate where
"class resolution of one issue or a small group of them will so advance the litigation that they may
fairly be said to predominate."  In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986)
(citation omitted).  In this case, the resolution of issues regarding implementation of BOP will
advance the adjudication of this case because Defendant's potential liability is relevant to the claims
of all members of the putative class.  In other words, a finding of Defendant's liability based on the
course of conduct common to all members of the class may likely be dispositive of some or all of
Plaintiffs' claims.  Thus, certification is appropriate and is not precluded by the presence of some
individualized issues amongst the proposed class members.

This Court notes that several courts have found that RPA claims are often ill-suited for class
treatment.[2]  These cases typically reason that class certification is inappropriate as to RPA claims
because the putative class plaintiffs must show actual competitive injury.  See O'Connell, 99 F.R.D.
at 122 (finding that "a plaintiff must demonstrate that the likely effect of the alleged price
discrimination was to allow a favored competitor to draw significant sales or profits away from him,
the disfavored competitor").  However, as the Supreme Court recently reiterated, "a permissible

_____

[2]Defendant cites several cases in support of this point, including O'Connell v. Citrus
Bowl, Inc., 99 F.R.D. 117, 122 (E.D.N.Y. 1983); Windham v. Am. Brands, Inc., 565 F.2d 59 (5th
Cir. 1977); Abernathy v. Bausch & Lomb Inc., 97 F.R.D. 470 (N.D. Tex. 1983); Mekani v.
Miller Brewing Co., 93 F.R.D. 506, 511 (E.D. Mich. 1982) (citing Boro Hall v. Metro. Tobacco
Co., 74 F.R.D. 142, 145 (E.D.N.Y. 1977)); Perry v. Amerada Hess Corp., 427 F. Supp. 667 (N.D.
Ga. 1977); Kelly v. Gen. Motors Corp., 425 F. Supp. 13 (E.D. Pa. 1976); Bel Air Mkts. v.
Foremost Dairies, Inc., 55 F.R.D. 538 (N.D. Cal. 1972)

inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time." Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, —, 126 S.Ct. 860, 870 (2006) (citing FTC v. Morton Sale Co., 371 U.S. 505, 518-19 (1948); Falls City Ind., Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 435 (1983)). This is precisely the type of competitive injury Plaintiffs allege here: that Ford's discriminatory pricing and rebates to BOP Certified dealers over a period of several years caused competitive injury. See Am. and Supplemented Class Action Compl.  ¶¶250, 282, 296. Whether or not Plaintiffs will prevail in establishing a presumption of competitive injury is not for this Court to decide as part of the certification analysis. See Barnes, 161 F.3d at 140 (holding that courts must "refrain from conducting a preliminary inquiry into the merits" upon a motion for class certification).  Even though Plaintiffs' claims may require adjudication of individualized issues, in light of the Third Circuit's instruction that "any error, if there is to be one, should be committed in favor of allowing a class action," this Court finds that certification of the class regarding the RPA and ADDCA claims is appropriate. Kahan v. Rosentiel, 424 F.2d 161, 169 (3d Cir.) cert. denied., 398 U.S. 950 (1970); See also Eisenberg v. Gagnon, 766 F.2d at 785; Prudential I, 962 F. Supp. at 508.

Class certification is also appropriate as it pertains to Plaintiffs' claims under their respective state laws.  These are essentially contract claims, raising common questions under the parties' uniform contracts.  While individual inquiries into state law would preclude class certification because there would exist questions of law not common to the class, that is not the case here.  In this case, New Jersey's choice of law rules are applicable because this Court is exercising supplemental jurisdiction over the state law claims in this federal question lawsuit.  See Gluck v. Unisys Corp.,

-21-

960 F.2d 1168, 1179 n. 8 (3d Cir. 1992) (requiring application of forum state's choice of law principles in diversity cases and pendent state law claims).  New Jersey follows the approach of the Restatement (Second) of Conflict of Laws.  Pursuant to Restatement § 187, the parties contractual choice of law provision will be enforced unless (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) the application of the law of the chosen state would violate a fundamental policy of a state, which has a materially greater interest than the chosen state and whose law would otherwise apply.  Christy v. We the People Forms and Serv. Ctrs. USA, Inc., 213 F.R.D. 235, 239 (D.N.J. 2003); N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 568 (1999).  Defendant does not dispute that all the Franchise Agreements relevant to this action were executed in Michigan and contain a Michigan choice of law provision.  Further, Defendant does not dispute that neither of the exceptions in Restatement § 187 are applicable.  This Court is not concerned that an application of Michigan law to the Plaintiffs' state law claims would violate a fundamental policy of any of the states.  Additionally, Ford is a corporation with significant ties to Michigan due to the fact that its principal office is located in Dearborn, Michigan; thus, there is no cause to question Michigan's relationship to the parties.

Defendant also argues that the predominance requirement is not satisfied because Plaintiffs' claim for damages requires individualized proof.  This argument is unpersuasive because, as stated above, class action certification is appropriate even when it is necessary to calculate damages on an individual basis.  See Holmes, 213 F.3d at 137.  This Court agrees with Plaintiffs' position that the predominance inquiry should be focused on the issue of whether there are common questions

regarding Defendant's alleged liability.  See Barabin v. Aramark Corp., 210 F.R.D. 152, 162 (E.D. Pa. 2002), aff'd (docket #) 2003 WL 355417 (3d Cir. 2003); see also Snider v. Upjohn, 115 F.R.D. 536, 541 (E.D. Pa. 1987) (citing Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977)). Focusing on whether there are common questions regarding potential liability is particularly appropriate in cases where liability hinges on an alleged wrongful course of conduct because if there are such common questions, then class certification undoubtedly advances the litigation as to all parties allegedly affected by that course of conduct.  See Prudential II, 148 F.3d at 314; In re Sch. Asbestos Litig., 789 F.2d at 1010.

Also in regard to damages, Plaintiffs bear the burden of showing that they can present evidence of classwide damages at trial.  See Prudential I, 962 F. Supp. at 517 (citing In re Sugar Indus. Antitrust Litig., 73 F.R.D. 322, 351-54 (E.D. Pa. 1976)).  As stated above, the merits or strengths of the evidence of damages Plaintiffs can set forth at trial is not relevant to our inquiry upon a motion for class certification.  Barnes, 161 F.3d at 140.  Here, the Court must evaluate whether Plaintiffs "adduce[d] sufficient evidence and a plausible theory to convince the Court that class-wide impact . . . may be proven by evidence common to all members."  Mercedes-Benz, 213 F.R.D. at 190.  In this case, Plaintiffs' Complaint identifies four categories of damages that are common to the class of Ford franchisees: (1) the franchisees' share of the 1% increase added to new Ford dealer invoices for Ford models in conjunction with the initiation of BOP; (2) losses caused by BOP to dealer operations in an effort to comply with BOP certification requirements; (3) loss of financial control of the respective dealerships and violation of the SSA; and (4) forfeit of interest and income from forced payment of the 1% "price increase. The Court is satisfied that these alleged

-23-

injuries impact the class as a whole and are common questions of fact because BOP was introduced

nationwide, to all Ford dealers.  Additionally, Plaintiffs' provide an example of how such classwide

damages could be calculated in this case, offering the work of an expert, Dr. Ernest  H. Manuel, Jr.,

in a related case.  See LaRobardier Certif; see also Bayshore Ford Truck Sales, Inc. et al v. Ford

Motor Co., Civil Action No. 99-cv-741, 2006 WL 3371690 (D.N.J. Nov. 17, 2006).  This Court is

satisfied with Plaintiff's submission that, at trial, they can produce an expert who is capable of

offering methodologies for calculating both class-wide damages as well as computing and allocating

damages suffered by each class member.

Based on the foregoing, this Court finds that common questions of law and fact regarding

Defendant's potential liability predominate over any individual issues and, thus Rule 23(b)(3)'s

predominance requirement is satisfied.

> 2.   Prosecution of a Class Action is Superior to Other Available Methods for Fair and Efficient Adjudication of the Controversy

In addition to predominance, Rule 23(b)(3) also requires that a "class action [be] superior to

other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

23(b)(3).  In evaluating whether the superiority requirement is satisfied, the Court looks to four non-

exclusive factors:

> (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.

See Fed. R. Civ. P. 23(b)(3).

In regard to the first superiority factor, Defendant argues that the individual dealers should

-24-

not be permitted to proceed as a class because they have "the financial and legal resources to manage their own legal affairs." Def. Opp'n Br. at 35.  Defendant is correct that the ability of the proposed class members to litigate their individual actions may weigh against class certification.  See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 74 (D.N.J. 1993).  However, in this case, there has been no showing that the class members are capable of prosecuting these claims.  Rather, it is evident that Representative Plaintiffs wish to proceed as a class and do not have an interest in individually controlling the prosecution of their claims.  This Court agrees with the reasoning set forth in Judge Linares' opinion in the factually similar case of Bayshore Ford Truck Sales, Inc. v. Ford Motor Company, Civil Action No. 99-cv-741, 2006 WL 3371690 (D.N.J. Nov. 17, 2006). Specifically, the fact that so few lawsuits have been filed by individuals indicates that a "*dis*interest exists among the class members in individually controlling this litigation." Id. at *10 (emphasis in original).  Relatedly, the lack of individual actions weighs in favor of  the second superiority factor: certifying the proposed class will not disrupt litigation commenced elsewhere because at this time no other actions based on these claims have been filed.

With regard to the third and fourth superiority factors, this Court is convinced that in light of (1) the common issues of fact and law in this case; and (2) the fact that this case has been concentrated in this forum since May, 6, 2002, a class action is the superior method for adjudicating Plaintiffs' claims.  As discussed above, Plaintiffs' claims share several core questions of fact and law.  Resolution of these questions in a single forum promotes judicial efficiency because the same issues regarding liability and damages will not be relitigated nationwide.  Additionally, Ford dealers will not be required to pay numerous experts to analyze the relevant data and testify as to their

results.  Even though, as stated above, analysis of damages may require some individualized inquiries, these issues are "significant only if they create a situation that is less fair and efficient than other available techniques."  In re Sugar Indus. Antitrust Litig., 73 F.R.D. at 358.  In light of the foregoing, the Court is convinced that a class action, rather than joinder or intervention, is a more efficient, fair, and superior method for adjudicating Plaintiffs' claims.

**IV.**   **CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendant's motion to strike arguments and evidence in Plaintiffs' Reply Brief is **denied** with the exception of paragraphs ¶¶4(c) and 4(g) of the Fette Certification and that Plaintiffs' motion to certify the class is **granted**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        January 31, 2007
Orig.:       Clerk
cc:          Counsel of Record
             The Honorable Ronald J. Hedges, U.S.M.J.
             File